AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
U.S. DISTRICT COURT
DISTRICT OF NEW MEXICO

2015 JUN 16 PM 3:42

CLERK-LAS CRUCES

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 15-MR-375
955 Mimbres Street )
Las Cruces, NM 88001 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of New Mexico , there is now concealed
*(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
— evidence of a crime;

— contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C., 841 & 846 | Possess with the Intent to Distribute a Controlled Substance |
| | Conspiracy to Possess with the Intent to Distribute a Controlled Substance |

The application is based on these facts:
See Attachment C

— Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is
requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Paul Schiller, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 16 June 2015

*Judge's signature*

City and state: Las Cruces, NM    Gregory B. Wormuth U.S. Magistrate Judge
*Printed name and title*

## Subject Premises
### 955 Mimbres Street, Las Cruces, Dona Ana County, New Mexico 88001

The premises to be searched is a residence located at 955 Mimbres Street, Las Cruces, Dona Ana County, New Mexico 88001. The residence is a single story home. The residence is red stucco with a pitched grey shingled roof with white trimming. The entire property is surrounded by a chain link fence.

To include the area outside the residence, outlying structures on the property, persons present in the residence, and any vehicles on the property and or curtilage.





## ATTACHMENT B

## ITEMS TO BE SEIZED

Evidence of violations of 21 USC §§ 841 and 846:

1. Books, records, receipts, notes, ledger and other documents relating to transporting, ordering, purchasing, manufacturing and/or distributing controlled substances.

2. Financial documents, including but not limited to, credit card statements, tax returns, safe deposit records, safe deposit keys, bank records, bank statements, money orders, Western Union receipts, checking account records, cashiers checks, passbooks and other items evidencing the obtainment, concealment and/or expenditure of money.

3. Records, including but not limited to, address and telephone books (in electronic form or otherwise), telephone bills, cellular telephones bills, airline tickets, rental car records, storage unit rental records, false identification documents, other forms of identification, vehicle titles, vehicle registrations, and records showing occupancy of the premises.

4. Proceeds of an unlawful activity, including but not limited to, currency, jewelry, vehicles and other assets or financial records related thereto.

5. Photographs and/or video recordings.

6. Controlled substances, including cocaine; drug paraphernalia; and packaging materials including scales, plastic baggies and tape.

7. Cellular telephones, including "Smart" phones and records or data related to violations of 21 U.S.C. §§ 841 and 846, and stored on any cellular telephones including:

    a. Digital, cellular, direct connect, and/or other phone numbers, names, addresses, and other identifying information of customers, distributors, sources of supply and other associates involved in this conspiracy;

    b. Digital, cellular, direct connect, and/or other phone numbers dialed from, which contacted, or which are otherwise stored on the cellular telephones, along with the date and time each such communication occurred;

    c. Text message logs and text messages whether sent from, to, or drafted on, the cellular telephones, along with the date and time each such communication occurred;

    d. The content of voice mail messages stored on the cellular telephones, along with the date and time each such communication occurred;

    e. Photographs or video recordings;



f.  Information relating to the schedule, whereabouts, or travel of the user of the cellular telephones;

g.  Information relating to other methods of communications utilized by the user of the cellular telephones and stored on the cellular telephones;

h.  Bank records, checks, credit card bills, account information and other financial records; and

i.  Evidence of user attribution showing who used or owned the cellular telephones, such as logs, phonebooks, saved usernames and passwords, documents, and internet browsing history.



PS

# ATTACHMENT C

# AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT

Your Affiant, Paul J. Schiller as a Special Agent of the Drug Enforcement Administration, having been duly sworn, does hereby depose and state:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been a Special Agent with the DEA since October 29, 2010. As a Special Agent with the DEA, I am a law enforcement officer of the United States within the meaning of Title 18, United States Code (USC) § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 USC § 2516.

2. My experience as a Special Agent includes, but is not limited to, conducting physical surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working Confidential Sources, working in an undercover capacity, analysis of materials received in response to the issuance of administrative and federal grand jury subpoenas, analysis of phone toll and financial records, and analysis of data derived from the use of pen registers, trap and traces, and wiretaps.

3. This affidavit is submitted in support of an order authorizing the search of the Subject Premises, as more fully described in Attachment A.

4. Through my training and experience, I know the following:

   a. Drug traffickers often place assets in names other than their own to avoid detection of these assets by law enforcement;

   b. Drug traffickers often place assets in corporate entities in order to avoid detection of these assets by law enforcement;

   c. Although these assets are in other persons' names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them;

   d. Drug traffickers frequently maintain large amounts of United States currency in their residences in order to maintain and finance their ongoing drug business;

   e. Drug traffickers frequently maintain at their residences books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances; drug traffickers commonly consign controlled substances to their clients and transporters; that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the traffickers have ready access to them;



PS

f. It is common for drug traffickers to secret contraband, proceeds of drug sales, and records of drugs transactions in secure locations within their residences, out buildings, sheds, and hidden compartments in vehicles for their ready access and to conceal them from law enforcement authorities;

g. Persons involved in drug trafficking conceal in their residences controlled substances, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to: obtaining, transferring, secreting, or the spending of large amounts of money made from engaging in drug trafficking activities;

h. Drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits; to accomplish these goals, drug traffickers utilize domestic banks and their attendant services, securities, cashier checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts;

i. Drug traffickers commonly keep in books or on papers names, addresses and telephone numbers of their associates in the illicit trafficking business;

j. Drug traffickers often possess or carry weapons to protect themselves and their controlled substances from theft by other trafficking organizations and seizure by law enforcement agencies.

k. Drug traffickers often use cellular telephones, two-way radios and other forms of electronic communications to contact their associates, place orders for drugs and control the delivery of illegal contraband.

5. The following information is based upon my personal knowledge as well as information provided by other federal, state and local officers and is presented as probable cause to search the Subject Premises. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause.

   a. On June 3, 2015, DEA Agents developed a Confidential Source (CS) that informed agents that Edward Valenciano had obtained 14 ounces of heroin from Juarez, Chihuahua, Mexico, and that the heroin was being stored at the Onate Green Mobile Home Park located at 1625 Spruce, Trailer 104, in Las Cruces, New Mexico. CS informed agents that this was the residence of Jared Slyh, and that Slyh received user amounts of heroin to store larger amounts of heroin at his residence.

   b. On the same date, TFO Undercover (UC) John Duffy (UC) and the CS rode in the same car to Slyh's residence where CS approached the front door while UC



remained inside of the car which was parked in the driveway. UC saw a man who fit the description of Slyh answer the door and allow CS to enter the residence. CS returned shortly thereafter and gave UC a bundle of heroin, which was later found to weigh 353.4 gross grams, wrapped in a white sock. CS was searched prior to and after the drug transaction with negative findings. CS was shown a photo of Slyh, and CS confirmed that Slyh was the person who had provided CS with the heroin. A driver's license lookup revealed that Slyh uses the Spruce address on his license.

c. Agents then directed CS to contact Edward Valenciano and inform him that CS was stopped by police for a traffic infraction and that CS's vehicle was impounded, but the police did not find the heroin.

d. On June 11, 2015, Agents directed CS to contact Valenciano and tell him that CS had gotten his vehicle back and was traveling to Tucson, Arizona, to sell the heroin to a customer for $6,700.00. CS told Valenciano that CS would meet Valenciano in Las Cruces, New Mexico to pay him back for the heroin CS had obtained on June 3, 2015. Three phone calls between CS and Valenciano during which the transaction was discussed were recorded.

e. Later that day, Agents provided CS with $6,000.00 and a recording device. Agents directed CS to meet with Valenciano at Las Trancas Restaurant and provide Valenciano with the money. Agents surveilled the meeting and observed Valenciano, who drove up to the restaurant in a black Cadillac Sedan, meet with CS. CS entered Valenciano's vehicle and both Valenciano and CS traveled to 955 Mimbres Street, in Las Cruces, New Mexico (Subject Premises). Agents watched Valenciano get out of his car and walk around the property of Subject Premises while the CS stayed in the car.

f. Shortly after, Agents saw Valenciano walk back to his vehicle and drive back to Las Trancas Restaurant. CS got out of the car and Agents again saw Valenciano drive back to the Subject Premises. Agents saw Valenciano turn off his vehicle, get out of the car, and walk towards the front door of the residence.

g. During a post-transaction debrief, CS told Agents that Valenciano stays at Subject Premises with a roommate. CS also told agents that Valenciano intended to travel to Juarez, Mexico, to pay his source there $5,700.00 for the heroin that agents had seized from Slyh. CS informed agents that CS paid Valenciano $6,000.00 the second time they were at the Las Trancas Restaurant. The CS told Agents that Valenciano was disappointed that CS had not made more money during the fictitious drug transaction in Tucson, Arizona. The CS was searched after the meeting with Valenciano with negative findings.

h. Agents reviewed the recording device CS wore during the meeting and money exchange with Valenciano and were able to corroborate what CS had told them during his post-transaction debrief. A border crossing check completed on



Valenciano revealed that he had entered the United States through the Paso Del Norte Port of Entry on June 12, 2015. Agents also learned that Valenciano traveled to California via the Los Angeles Limousine Bus and planned to return to Las Cruces, New Mexico on June 16, 2015.

i. Agents debriefed CS on June 15, 2015, and CS said that CS observed 6.5 ounces of heroin in the bedroom of the Subject Premises on June 13, 2015, which CS believed Valenciano had obtained when he went to Mexico on June 12, 2015.

j. On June 16, 2015, agents approached and arrested Valenciano at the bus station when he arrived back from California to Las Cruces, New Mexico, on Los Angeles Limousine Bus number 884. Agents told Valenciano that he was under arrest for conspiracy to distribute heroin. A search conducted incident to arrest revealed that Valenciano had a spoon with heroin residue, a rubber container with heroin residue, two needles, and 6 grams of methamphetamine. Valenciano told agents that he had never distributed heroin, was only a drug user, and that he had never been to the Subject Premises.

Based on the above information, I believe that there is probable cause to believe that Subject Premises may have illegal narcotics, illegal proceeds, packaging material, and drug ledgers stored within it, and that there is probable cause to issue a warrant for the Subject Premises, as they it is more fully described in Attachment A.

PAUL J. SCHILLER
Special Agent, DEA

SUBSCRIBED and SWORN to before me this ____ day of June, 2015.

Gregory B. Wormuth
United States Magistrate Judge